# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WALDO J. MORET, JR, CLYDE M. HUNTER, AND SHIKEEMA L. JONES, | )<br>) CAUSE NO.: 26-cv-01636<br>) |
| **Plaintiffs,** | )<br>) |
| v. | ) JUDGE: VANCE<br>) |
| BRUNO & TERVALON, LLP, JONALD WALKER, III, and STERLING-WALKER ENTERPRISES, LLC, | )<br>)<br>)<br>) |
| **Defendants.** | )<br>)<br>) |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND WRIT OF CIVIL SEQUESTRATION

Plaintiffs Waldo J. Moret, Jr., Clyde M. Hunter, and Shikeema L. Jones, ("Plaintiffs"), by and through his undersigned counsel, respectfully moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 65 and 64, for the immediate entry of a Temporary Restraining Order ("TRO"), a Preliminary Injunction, and a Writ of Civil Sequestration.

Plaintiff seeks an emergency freeze and physical seizure of all funds, up to $1,228,102.48, currently held in four accounts:

| | |
|---|---|
| National Financial Services, LLC (Sterling-Walker Enterprises, LLC) | Account No. 065400153 |
| Hancock Whitney Bank (Bruno & Tervalon, LLP) | Account No. 62885859 |
| Hancock Whitney Bank (Jonald Walker, III) | Account in Name of "Jonald Walker, III" |
| Capital One, NA Bank (Jonald Walker, III) | Account No. 065000090, in Name of "Jonald Walker, III" |

1

The above listed accounts are in the name of, or for the benefit of, Defendants Jonald Walker, III and/or Sterling-Walker Enterprises, LLC, where indicated, and represent Plaintiffs' converted and stolen retirement trust assets.

In support of this emergency application, Plaintiff respectfully submits the following Memorandum, the attached Verification and Affidavit of Waldo J. Moret, Jr., and supporting exhibits. (Exhibit A).

I. **EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND SEQUESTRATION**

This application is brought on an emergency, expedited basis to prevent the immediate, irreversible dissipation of Plaintiffs' liquidated 401(k) retirement funds. In November 2025, Defendant Jonald Walker, III, acting as the Plan Administrator of the Bruno & Tervalon CPAs 401(k) Profit Sharing Plan, unlawfully liquidated Plaintiffs' entire retirement account—containing $1,142,421.84 for Waldo Moret, $68,427.70 for Clyde Hunter, and $17,252.94 for Shikeema Jones—without Plaintiffs' knowledge, authorization, or consent.

Walker directed John Hancock to transfer these retirement assets to a standard corporate operating checking account at Hancock Whitney Bank (Account No. 62885859). Within days of receiving the transfer, Walker began dispersing the funds to pay himself, as well as personal and corporate liabilities. On November 25, 2025, Walker executed an outgoing wire of $500,000.00 from the Whitney operating account directly to National Financial Services, LLC, specifically designated for the "further credit of" Sterling-Walker Enterprises, LLC, a corporate entity solely controlled by Walker and his wife.

On November 26, 2025, Jonald Walker caused another $500,000 of the plaintiffs' retirement money to be wired to national financial services to further credit of Sterling Walker Enterprises. On December 2, 2025, Jonald Walker caused another $100,000 of plaintiffs'

retirement money to be transferred by check to his Personal Capital One account. On December 3, 2025, Jonald Walker caused another $100,000 of plaintiffs' retirement money to be transferred by check to his Personal Capital One account, and $50,000 of plaintiffs' retirement money to be transferred by check to his Personal Hancock Whitney account.

Sterling-Walker Enterprises, LLC, Bruno & Tervalon, LLP, and Jonald Walker, III, are currently in possession of these stolen trust funds in a personal brokerage account, and individual bank accounts, which are subject to immediate transfer or dissipation.

Denying this emergency relief will cause Plaintiffs permanent, irreparable harm, as the dissipation of these specific, traceable funds would extinguish Plaintiff's equitable remedies under ERISA Section 502(a)(3).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure Rule 65 governs injunctions and restraining orders, and Rule 65(b) sets forth the procedural rules governing the issuance of temporary restraining orders. Under Rule 65(b), a court may issue a temporary restraining order without notice only if:

(A) [S]pecific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) [T]he movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

When a TRO is "issued without notice to the adverse party," the order must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice; and be promptly filed in the clerk's office and entered in the record." F.R.C.P. 65(b)(2). "The order expires at the time after entry—not to exceed 14 days—

that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record." *Id.*

The plaintiff must additionally establish the following essential elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not do disservice to the public interest.[1] Because such relief is an extraordinary remedy, to justify entry of a temporary restraining order or preliminary injunction,[2] the petitioner must "clearly carr[y] the burden of persuasion on all four elements."[3] If a plaintiff fails to carry its burden as to any one of these factors, injunctive relief cannot be granted.[4] Regardless of whether the temporary restraining order is granted, Federal Rule of Civil Procedure 52(a) requires the Court to "state the findings of fact and conclusions of law that support its action."[5]

## III.    LAW AND ARGUMENT

### A.  Plaintiffs are Highly Likely to Succeed on the Merits of Their ERISA Claim.

Plaintiffs' claims against Defendants arise under ERISA Sections 404, 406, 409, and 502(a)(3) (29 U.S.C. §§ 1104, 1106, 1109, and 1132(a)(3)). The evidentiary record of clear fiduciary misconduct is overwhelming. First, under the Bruno & Tervalon CPAs 401(k) Plan documents, any distribution of a participant's vested interest exceeding $5,000.00 strictly requires prior written participant consent. Defendant Walker, as a named Plan Trustee and

---

[1] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).
[2]  *See Gregory v. Miller*, No. 04-3017, 2007 WL 891878, at *2 (E.D. La. Mar. 21, 2007) (Engelhardt, J.).
[3] *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (internal quotation marks and citations omitted).
[4] *Enterprise Int'l Inc. v. Corp. Estatal Petrolera Ecautoriana*, 762 F.2d 464, 472 (5th Cir. 1985).
[5] Fed. R. Civ. P. 52(a)(1), (2).

Administrator, owed Plaintiff the highest fiduciary duties of loyalty, prudence, and strict adherence to Plan documents. By liquidating Plaintiffs' entire account without obtaining their consent or providing the mandatory 30-to-180-day direct rollover tax notices, Walker committed an egregious, per se breach of these duties.

Second, under ERISA Section 406(a)(1)(D), a fiduciary is prohibited from causing a plan to engage in a transaction that constitutes a direct or indirect transfer of plan assets to, or use by or for the benefit of, a party in interest. Sterling-Walker Enterprises, LLC—as an entity owned and controlled by the Plan Administrator—is a party in interest under Section 3(14). The transfer of $1,250,000.00 of Plan trust assets into Sterling-Walker's brokerage account and Walker's personal bank accounts represent a prohibited transaction. Because Sterling-Walker is controlled by Walker, his actual fraudulent intent and knowledge of the trust character of the funds are legally imputed to the entity. This Court has jurisdiction to reach trust property in the hands of a non-fiduciary transferee who has notice of the breach. *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.* (2000) Sterling-Walker is not a good-faith purchaser for value, and its possession of the funds is entirely unlawful.

### B. Denial of Relief Will Cause Immediate, Irreparable Harm Under the *Montanile* Precedent

Absent an immediate asset freeze, Plaintiffs will suffer serious and irreparable injury. In *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 57 U.S. 136 (2016), the United States Supreme Court held that equitable remedies under ERISA Section 502(a)(3) are strictly limited to specific, traceable funds or property in the defendant's possession. If a transferee dissipates the target trust funds on non-traceable, general items, the equitable lien is arguably destroyed, and the plaintiff cannot recover a personal money judgment from the defendant's general assets. Consequently, if Walker or Sterling-Walker Enterprises are

permitted to transfer or spend the monies currently sitting in the four enumerated accounts, Plaintiff's statutory right of recovery will be compromised. This legal reality satisfies the irreparable harm standard as a matter of law.

### C. The threatened injury outweighs any damage that the injunction will cause to the adverse party

The balance of hardships favors Plaintiffs because the threatened, irreversible injury of denying an injunction outweighs any nominal inconvenience or damage a freeze might cause to Defendants Jonald Walker, III, Sterling-Walker Enterprises, LLC, and Bruno & Tervalon, LLP. Absent an emergency restraining order, plaintiffs' face the permanent and complete loss of their retirement savings—specifically the $1,250,000.00 in ERISA-protected trust assets that were unlawfully liquidated from the John Hancock account and wired directly to a personal brokerage account at National Financial Services for the benefit of Walker's controlled entity, Sterling Walker Enterprises, LLC.

If these funds are further used on nontraceable expenses or personal liabilities, Moret's equitable tracing remedies under federal law will be potentially extinguished. In contrast, Defendants can claim no legitimate, cognizable damage from an injunction that merely freezes these traceable funds that they have absolutely no lawful right to. An order restricting the transfer of stolen trust property does not infringe upon any of their legitimate, personal or corporate business operations.

### D. The injunction will not do disservice to the public interest.

Finally, the requested injunction will not do disservice to the public interest. Instead, it advances the core public policy mandates of federal law and ERISA. In enacting ERISA, Congress declared a public interest in protecting the financial well-being and security of millions of American workers who are reliant on employee benefit plans. Enforcing the fiduciary duties

of loyalty and prudence and preventing the unauthorized diversion and dissipation of plan trust assets, is paramount to maintaining the integrity of the private retirement system.

Far from causing any disservice, granting this emergency relief to freeze the $1,228,102.48 in plan trust assets Belonging to the three plaintiffs in this case currently sitting in the enumerated bank accounts of Jonald Walker and Sterling Walker Enterprises, LLC serves the public interest by protecting retirement funds from theft. Denying the injunction, conversely, would undermine public confidence in the private pension system and tolerate the rapid, untraceable dissipation of plan assets. The public interest is served by a clear judicial signal that federal courts will utilize their equitable powers to reach fraudulently diverted trust property in the hands of a non-fiduciary transferee who has received it with notice of the breach, thereby protecting innocent participants from the permanent loss of their life savings.

### E.  The Court Should Exercise Its Discretion to Waive the Security Bond Under FRCP 65(c).

Under Federal Rule of Civil Procedure 65(c), a court may issue a temporary restraining order or preliminary injunction "only if the movant gives security in an amount that the court considers proper." However, federal courts in the Fifth Circuit and nationwide retain broad, absolute discretion to waive the bond requirement or require only a nominal bond (such as $0.00 or $100.00) under appropriate circumstances. Waiving the security bond is highly warranted in this case for three reasons:

First, the bank and wire records establish that Defendants converted and misappropriated $1,228,102.48 of Plaintiffs' retirement savings. Requiring a victim of massive, documented fiduciary theft to post a substantial cash bond to freeze his own stolen funds would compound the severe financial injury already inflicted by Defendants.

Second, the $1,228,102.48 sought to be frozen is not Defendants' rightful property; it is the physical trust property of the ERISA Plan. Freezing these assets merely preserves the status quo and protects the trust estate. Defendants have no legitimate, legal interest in utilizing or investing stolen trust funds during the pendency of this litigation, meaning they face zero risk of cognizable monetary damages or legal injury from the issuance of a freeze order.

Third, where the plaintiff presents an open-and-shut case of fraudulent conversion, supported by concrete documentary evidence (including John Hancock statement of a $0.00 balance and bank statements clearly showing the fraudulent transfer of plan assets to Walker's entity), the necessity of a bond is minimized or eliminated. Accordingly, Plaintiff respectfully requests that the Court waive the security bond requirement in its entirety, or in the alternative, require a nominal bond of no more than $100.00.[6]

### F. Civil Sequestration of the Brokerage Account and Bank Accounts is Authorized Under FRCP 64 and Louisiana Law.

Plaintiffs further request the Court order the immediate sequestration of the brokerage account maintained by Defendant And personal and corporate bank accounts identify below that presently contain identifiable assets traceable to the misappropriated assets of the Plan.

| | |
|---|---|
| National Financial Services, LLC (Sterling-Walker Enterprises, LLC) | Account No. 065400153 |
| Hancock Whitney Bank (Bruno & Tervalon, LLP) | Account No. 62885859 |
| Hancock Whitney Bank (Jonald Walker, III) | Account in Name of "Jonald Walker, III" |
| Capital One, NA Bank (Jonald Walker, III) | Account No. 065000090, in Name of "Jonald Walker, III" |

---

[6] Similar reasoning was applied by Judge Brown in ordering a $100.00 bond to secure a Temporary Restraining Order in *Yogaratnam v. Defendant 1*, Case No. 24-393 (2/23/24).

The evidence establishes a substantial likelihood that Defendants unlawfully diverted approximately $1,250,000 in ERISA plan assets into the account, where those funds remain subject to dissipation, transfer, or concealment absent immediate judicial intervention.

ERISA expressly authorizes fiduciaries to seek appropriate equitable relief to enforce the statute and the terms of the Plan. 29 U.S.C. § 1132(a)(3). In addition, Federal Rule of Civil Procedure 64 permits a federal court to employ available state-law prejudgment remedies, including sequestration where authorized by state law, to secure property that is the subject of the litigation. Under Louisiana Code of Civil Procedure Article 3571, a writ of sequestration may issue when the plaintiff claims the ownership or right to possession of property, or a mortgage, lien, or privilege thereon, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish during the pendency of the action. Here, Plaintiffs have a direct, equitable property right in $1,000,000.00 currently held at National Financial Services, LLC, and $228,102.48 held in defendants Capital One account.

Because the accounts contain specific, identifiable property that rightfully belongs to the Plan, Plaintiffs seeks to preserve the money at issue in this action pending final adjudication. The requested sequestration is necessary to prevent irreparable harm by ensuring that the misappropriated Plan assets remain available for restoration to the Plan pursuant to 29 U.S.C. § 1109(a), and the balance of equities overwhelmingly favors preserving those assets over permitting Defendant to further dissipate funds held in violation of ERISA's fiduciary obligations.

Because this money represents highly liquid assets that can be wired or spent in a matter of seconds, it is entirely within Defendants' power to conceal, dispose of, or waste the property. Consequently, all statutory criteria for civil sequestration under Louisiana law are fully satisfied.

## IV.   CONCLUSION

Plaintiffs respectfully request this Court grant his Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Writ of Civil Sequestration to enjoin the Defendants from further transferring, withdrawing, or dissipating their stolen retirement assets. Specifically, Plaintiff requests an immediate order freezing the $1,228,102.48 in Plan trust assets currently held by National Financial Services, LLC, Capital One Bank, and Hancock Whitney Bank for the benefit of the defendants, and imposing a constructive trust over these traceable funds to protect them from nontraceable dissipation.

Finally, to secure these funds during the pendency of this litigation, Plaintiff requests a writ of civil sequestration and petitions the Court to waive the customary security bond requirement under Federal Rule of Civil Procedure 65(c) in light of the Defendants' clear and egregious fiduciary fraud.

Respectfully submitted,

**SLATER SLATER SCHULMAN, LLP**

*/s/ Daniel A. Meyer*
Daniel A. Meyer (La. Bar No. 33278)
Justin Lacour (La. Bar No. 34626)
6023 Magazine Street
New Orleans, Louisiana 70118
Telephone: (504) 334-8522
Facsimile: (212) 922-0907
dmeyer@sssfirm.com
*Counsel for Plaintiffs*

10